UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JOHNNY TIPPINS,

        Plaintiff,

v.

LES PARISH et al.,

        Defendants.
_____/

Case No. 1:19-cv-781

Honorable Janet T. Neff

# **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under Federal Rule of Civil Procedure 21, the Court is permitted to drop parties *sua sponte* when the parties have been misjoined. Pursuant to that rule, the Court will drop as misjoined Defendants Parish, Bassett, Spencley, Nichols, Vogue, McGlone, Wert, Anderson, and Martinson and dismiss Plaintiff's claims against them without prejudice.

With regard to the claims that remain, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Reviewing Plaintiff's remaining claims against that standard, the Court

will dismiss all of Plaintiff's claims against remaining Defendants J. Dalton, J. Bellinger, Patricia Lamb, and Corizon Healthcare, Inc.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Michigan. The events about which he complains occurred at that facility. Plaintiff sues ECF healthcare providers J. Dalton, J. Bellinger, and Patricia Lamb as well as Corizon Healthcare, Inc. He also sues ECF Warden Les Parish; Grievance Coordinator T. Bassett; Assistant Deputy Warden J. Spencley; and Corrections Officers B. Nichols, Unknown Vogue, Unknown McGlone, Unknown Wert, Unknown Anderson, and Unknown Martinson.

### A. Healthcare Defendants

Plaintiff arrived at ECF on April 11, 2019. Plaintiff suffers from Graves disease. On May 14, 2019, Plaintiff saw Defendant Dalton, a Corizon employee according to Plaintiff, for annual lab work. He complained of Graves disease symptoms and asked to see an endocrinologist and to be treated with the medication Tapazole. Instead, Dalton ordered stool samples and x-rays of Plaintiff's neck, chest, and stomach. Petitioner attaches the results of the lab work and x-rays to his complaint. (ECF No. 1-1, PageID.25.) Defendant Dalton reported that "[n]o significant abnormality exists." (*Id.*) Nonetheless, she invited Plaintiff to kite for re-evaluation if his symptoms did not resolve. (*Id.*)

Plaintiff grieved Dalton two days after he met with her. He claimed he was being deprived of medical treatment that the deprivation was affecting his heart. (5/16/19 Grievance, ECF No. 1-1, PageID.20-24.) Defendant Bellinger responded to the grievance, denying it because

2

"[Plaintiff's] disagreement with the treatment plan [did] not constitute a denial of care." (*Id.*, PageID.21.)[1]

Plaintiff appealed Bellinger's response, claiming that Corizon did not treat pre-existing conditions or African Americans for pre-existing conditions. (*Id.*, PageID.23.) Defendant Lamb denied Petitioner's appeal. She reviewed the medical record, noted that testing did not identify any underlying pathology. (*Id.*, PageID.22.) She also noted that Plaintiff's continued concerns had prompted an unidentified ECF nurse to refer Plaintiff to a medical provider for further evaluation. (*Id.*)

Plaintiff appealed Defendant Lamb's resolution of his first appeal. He was again denied relief. Plaintiff claims that Defendant Corizon altered his lab results. (Compl., ECF No. 1, PageID.6.) Plaintiff also claims that Corizon has sent a white prisoner, Rouse, to Jackson for treatment of pre-existing conditions, but refused to send Plaintiff because he is African-American. (*Id.*, PageID.7.) Plaintiff also contends that Corizon does not provide healthcare to African-American prisoners as evidenced by the fact that Plaintiff complained of Graves disease symptoms for years and Corizon forces him to pay a co-pay for treatment. (*Id.*, PageID.6.) Finally, Plaintiff complains that Defendant Dalton refused to give Plaintiff a snack bag and did not allow Plaintiff to see a dietician.

### B. Complaints about food service

On May 26, 2019, Plaintiff filed a grievance raising two issues relating to food service: (1) for a particular meal combination—cornbread hot dogs, potatoes, and beans—the

---

[1] Plaintiff said that as he went into the interview with Defendant Bellinger, he heard Defendant Vogue tell Bellinger to not give Plaintiff anything because all Plaintiff does is complain and file grievances. (Compl., ECF No. 1, PageID.5.) There are no facts alleged in the complaint that show that Defendant Vogue participated in Bellinger's or Lamb's processing of Plaintiff's grievance or in Dalton's provision of healthcare services to Plaintiff. There are also no facts alleged in the complaint that show that Bellinger, Lamb, or Dalton were acting based on anything Vogue may have said or done.

3

kitchen routinely substituted corn for potatoes; and (2) meals are not served hot. (5/26/2019 Grievance, ECF No. 1-1, PageID.26.) Plaintiff claims the corn for potatoes substitution results in a calorie reduction which makes it difficult for Plaintiff, a borderline diabetic, to maintain his weight. Defendants T Bassett and J. Spencley rejected the grievance because it raised multiple issues. Plaintiff appealed the rejection. Defendant Parish denied the appeal.

### C. Complaint about requiring inmates to wear a shirt

On July 19, Plaintiff was exercising in the yard. He pulled the front of his shirt over his head to relieve himself from the heat. Defendant Martinson told Plaintiff he could not wear his shirt that way and directed Plaintiff to pull his shirt down. Plaintiff refused and gave his identification card to Martinson and told Martinson to write a ticket. Martinson went inside to talk with Vogue. Plaintiff claims Martinson returned with instructions from Vogue to order Plaintiff to return to his cell under threat of placement in segregation.

Plaintiff wrote grievances with regard to the shirt issue. Defendants Bassett and Spencley rejected the grievances. Plaintiff contends there is no justification for implementing a policy that prohibits male inmates from showing their "chest nipples." (Compl., ECF No. 1, PageID.8.) He claims the policy is illegal, violates human rights, and fails to acknowledge health conditions, such as Plaintiff's Graves disease which affects heat regulation.

### D. Complaint about drinking water

Plaintiff claims the water in his cell tastes salty. He has been told that the water is softened. Plaintiff contends the water is contaminated and that corrections officers bring their own water. Defendant Parish refuses to explain. Defendants Nichols and Spencley rejected a grievance about it.

4

### E. Plaintiff's bowl

On July 28, Plaintiff had a confrontation with Defendant Vogue regarding his bowl. Plaintiff notes that he is indigent and does not possess a drinking cup. Instead, he uses a bowl. Vogue threatened to take the bowl after Plaintiff started filing grievances. Vogue called Plaintiff out of his cell and then ordered Plaintiff to not stop at the water fountain to fill his bowl with drinking water. Vogue ordered Plaintiff to give up the bowl. Plaintiff refused to yield the bowl instead offering his ID card. Vogue aggressively snatched the card "assaulting" Plaintiff with the card such that it scratched Plaintiff's hand as Vogue yanked it away.[2]

Vogue wrote a ticket against Plaintiff for disobeying a direct order. The ticket reviewer reduced it from a Class II offense to a Class III offense. Plaintiff claims Vogue was enraged and threatened to have Plaintiff's throat cut. He also threatened to commit a serious assault against Plaintiff.

### F. Electronic law library

Defendant Wert would not let Plaintiff use the electronic law library even though Prisoner Counselor Holden had given Plaintiff permission. Plaintiff threatened to grieve Wert; Wert wrote a ticket on Plaintiff. Plaintiff claims the misconduct ticket was false and retaliatory.

### G. Special tray

On August 8, Vogue told Defendant Anderson to make sure Plaintiff got the "special tray." Anderson located a tray and offered it to Plaintiff, Plaintiff refused it. Defendant McGlone insisted that Plaintiff take the tray. Plaintiff again refused. Anderson then gave him another tray "like the . . . tray" Plaintiff had refused. (Compl., ECF No. 1, PageID.13.) Plaintiff filed a grievance against Anderson. Anderson then shook down Plaintiff's cell "several times"

---

[2] Plaintiff contrasts Vogue's treatment of Plaintiff with Vogue's treatment of inmate Libby, a white inmate, who was allowed to bring his bowl to chow and Vogue was "extra friendly" to him.

removing personal property and legal material. Plaintiff filed another grievance for Anderson's retaliatory conduct.

### H. Going last

On August 30, September 1, and September 2, Vogue made sure Plaintiff was served last for meals so he would receive lesser portions or no food at all. Vogue also makes sure Plaintiff is last for showers and for legal mail processing.

### I. Relief sought

Plaintiff claims Defendants have violated his First, Eighth, and Fourteenth Amendment rights. Plaintiff asks for declaratory relief ending ECF's policy of forcing inmates to drink contaminated water and ECF's policy of insisting that inmates wear shirts during outside activities. Plaintiff seeks preliminary injunctive relief compelling Plaintiff's transfer to a different facility and compelling proper treatment for Plaintiff's Graves disease. Plaintiff also seeks a total of $2,415,000 in compensatory and punitive damages.

## II. Misjoinder

The joinder of claims, parties, and remedies is "strongly encouraged" when appropriate to further judicial economy and fairness. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). This does not mean, however, that parties should be given free rein to join multiple plaintiffs and multiple defendants into a single lawsuit when the claims are unrelated. *See, e.g., Pruden v. SCI Camp Hill*, 252 F. App'x 436, 437 (3d Cir. 2007) (per curiam); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997); *Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009) (adopting magistrate judge's report).

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs

when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure Civil § 1655 (3d ed. 2001), *quoted in Proctor*, 661 F. Supp. 2d at 778, and *Garcia v. Munoz,* No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778. When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which

7

the alleged acts occurred; whether the acts of . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Michigan Dep't of Corrections*, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees--for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .

> A buckshot complaint that would be rejected if filed by a free person -- say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions -- should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168-69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Correctional Center*, 136 F.3d 458, 464 (5th Cir. 1998); *Shephard v. Edwards*, 2001 WL 1681145, *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule). To allow Plaintiff to proceed with improperly joined claims and defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should his claims turn out to be frivolous.

The foundation of Plaintiff's complaint appears to be his claim that Defendants Dalton, Bellinger, Lamb, and Corizon have been deliberately indifferent to Plaintiff's serious medical needs. The deliberate indifference claim under the Eighth Amendment is the first claim he alleges, and it is the first claim in time. Plaintiff alleges additional claims against Defendant Corizon regarding violation of Plaintiff's equal protection rights under the Fourteenth Amendment because Corizon will not treat Plaintiff's Graves disease because it is a pre-existing condition or because Plaintiff is an African-American man with a pre-existing condition.

Plaintiff's other claims follow Plaintiff's "failure to treat" claims, chronologically. Although they include additional claims of Eighth Amendment violations, as well as Fourteenth Amendment equal protection claims and First Amendment retaliation claims, they are not based on deliberate indifference to or any discriminatory failure to treat Plaintiff's medical condition. They are raised against different Defendants, based on different conduct that subjected Plaintiff to different harms. The claims are entirely discrete, there is no transactional relationship between them, on the one hand, and Plaintiff's claims against the healthcare providers, on the other hand. Therefore, the additional claims and parties are misjoined.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 572-573 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'"); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Bldg. Co.*, 848 F.2d at 682.

In this case, Plaintiff brings his causes of action against the improperly joined defendants under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

All of the actions about which Plaintiff complains occurred in 2019, well within the three-year period of limitations. Those claims are not at risk of being time-barred. Plaintiff therefore will not suffer gratuitous harm if the improperly joined Defendants are dropped and the claims against them dismissed. Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Parish, Bassett, Spencley, Nichols, Vogue, McGlone, Wert, Anderson, and Martinson from the action, and dismiss Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits by Plaintiff.[3] *See Coughlin*, 130 F.3d at 1350 ("In such a

---

[3] Plaintiff is cautioned, again, that he must limit all future actions to claims and Defendants that are transactionally related to one another.

case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs."); *Carney*, 2008 WL 485204, at *3 (same).

### III. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Eighth Amendment

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction

is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the

misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

The Court will assume for purposes of this opinion that Plaintiff's allegations suffice to show the objective component of an Eighth Amendment claim—that he has a serious medical need. However, his allegations fall short with regard to the subjective component. Plaintiff's allegations show that Defendant Dalton listened to Plaintiff's complaints, ordered diagnostic testing, and then, based upon the results, determined that further treatment was not

necessary. Moreover, to the extent Plaintiff's symptoms did not resolve, he was encouraged to kite healthcare again. The circumstances Plaintiff describes do not indicate that Dalton was aware of a risk and then ignored it. Accordingly, Plaintiff has failed to state a claim against her.

Defendants Bellinger and Lamb did not directly treat Plaintiff. Nonetheless, to the extent Bellinger's, and then Lamb's, review of Plaintiff's grievance gave them notice of his serious medical need, Plaintiff has failed to show that they were deliberately indifferent to that need. They considered the test results and likewise concluded that "no further Health Care interventions were indicated at that time." (5/16/2019 Grievance, ECF No. 1-1, PageID.22.) Moreover, Lamb acknowledged that Plaintiff had followed Dalton's advice, again raising the issue of his symptoms to healthcare personnel when those symptoms did not resolve. (*Id.*) As a result, Plaintiff was referred to the medical provider. (*Id.*) There is nothing in Bellinger's response or Lamb's response that indicates that either defendant was aware of a risk to Plaintiff, and then disregarded that risk. Accordingly, Plaintiff has failed to state a claim against Defendant Bellinger or Defendant Lamb.

Plaintiff has failed to show that Defendant Corizon was aware of, and disregarded, a risk to Plaintiff. It appears that Plaintiff has sued Corizon because Corizon employed Defendants Dalton, Bellinger, and Lamb. Corizon is not liable simply because it employed or supervised an individual who violated Plaintiff's constitutional rights. In other words, it is not liable under a theory of vicarious liability or respondeat superior. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). Instead, Plaintiff must establish that a policy or custom of the corporation caused the alleged injury. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998); *Street*, 102 F.3d at 818.

Plaintiff touches upon the existence of such a policy when he claims that Corizon does not treat pre-existing conditions or does not treat African-American inmates with pre-existing

16

conditions. To the extent Plaintiff's allegations were intended to satisfy the requirements of showing a Corizon policy caused Plaintiff's injury, his allegations fall short. They are conclusory and entirely implausible. Essentially, Plaintiff avers that Corizon has a policy of not providing healthcare or not providing healthcare to African-American men. He offers no facts to support the statement. Absent factual content that might permit the Court to infer the presence of an injury-causing policy here, Plaintiff has failed to state a claim.

### B. Equal protection

Plaintiff's claim that Corizon does not provide healthcare to African-American men with pre-existing conditions also implicates the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). Plaintiff alleges that Corizon treats him differently because of his race.

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'"). Plaintiff alleges disparate treatment here, but his allegations are conclusory: "Corizon . . . sent a white prisoner Rouse . . . to Jackson for treatment of pre-existing conditions and refused to send [Plaintiff] for treatment." (Compl., ECF No. 1, PageID.7.) Conclusory allegations of unconstitutional conduct without specific factual

17

allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

An "equal protection" plaintiff must be similarly situated to his comparators "in all relevant respects . . . ." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011); *see also Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) ("'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"); *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'"). Plaintiff fails to allege that Rouse was similarly situated in all relevant respects. *Umani v. Mich. Dep't of Corr.,* 432 F. App'x 453, 460 (6th Cir. 2011) (To be a similarly-situated person, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or [the defendant's] treatment of them for it.'") (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)); *Project Reflect, Inc. v. Metropolitan Nashville Bd. of Public Educ.*, 947 F. Supp. 2d 868, 881 (M.D. Tenn. 2013) ("'Plaintiffs . . . fail to plead the existence of a similarly situated comparator . . . [therefore,] the Complaint does not contain sufficient factual matter to state a plausible claim."). For Plaintiff, one factor particularly relevant to the determination that he and Rouse are similarly situated would be diagnostic test results that were "unremarkable." Plaintiff's complaint is silent with regard to that and other relevant factors. Plaintiff says only that he and Rouse are alike in that they have pre-existing conditions but different with regard to race. Because Plaintiff's allegations of a similarly situated comparator fall short, he has failed to state a claim for violation of his equal protection rights.

**Conclusion**

Having conducted the review authorized by the joinder rules, the Court elects to drop as misjoined parties Defendants Parish, Bassett, Spencley, Nichols, Vogue, McGlone, Wert, Anderson, and Martinson. The Court will dismiss Plaintiff's claims against them without prejudice.

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's claims against the remaining Defendants—Dalton, Bellinger, Lamb, and Corizon—be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). The Court does not certify that an appeal would not be in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

An order and a judgment consistent with this opinion will be entered.


Dated: October 15, 2019                    /s/ Janet T. Neff
                                           Janet T. Neff
                                           United States District Judge